**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWN BOYKIN,<br><br>           Petitioner,<br><br>      v.<br><br>WOFFORD,<br><br>           Respondent. | Case No. 1:13-cv-01592-BAM-HC<br><br>ORDER DISMISSING THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS WITHOUT LEAVE TO AMEND (DOC. 8)<br><br>ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>ORDER DIRECTING THE CLERK TO CLOSE THE ACTION |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), Petitioner has consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting Petitioner's consent in a writing signed by Petitioner and filed by Petitioner on October 11, 2013.

Pending before the Court is the first amended petition (FAP), which was filed on November 14, 2013.

1

I.  <u>Screening the Petition</u>

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997).

Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus.  The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...."  Habeas Rule 4; <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990); see also <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested.  Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error.  Rule 4, Advisory Committee Notes, 1976 Adoption; <u>O'Bremski v. Maass</u>, 915 F.2d at 420 (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 75 n.7 (1977)).  Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal.  <u>Hendricks v. Vasquez</u>, 908 F.2d at 491.

Further, the Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.  Advisory Committee Notes to Habeas Rule 8, 1976

2

Adoption; <u>see</u>, <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43 (9th Cir. 2001).

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440 F.2d 13, 14 (9th Cir. 1971).

Here, Petitioner alleges that he is serving a sentence of fifteen years to life plus one year imposed by the Los Angeles County Superior Court in 1986 for second degree murder with a gun enhancement.  Petitioner challenges the decision of California's Board of Parole Hearings (BPH) made after a hearing held on or about September 26, 2011, finding that Petitioner was unsuitable for parole.  Petitioner alleges that he was only seventeen years old when he committed the commitment offense, and that the BPH failed duly to consider his juvenile conviction as a mitigating factor and an indication of lesser culpability in violation of his federal right to due process of law and liberty interest as well as specified state regulations and state court decisions.  (FAP, doc. 8 at 4-9.)  Petitioner further appears to contend that being denied parole when he was forty-two years old was cruel and unusual punishment.

II.  <u>Dismissal of State Law Claims</u>

Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation.  <u>Wilson v. Corcoran</u>, 562 U.S. — , 131 S.Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>,

502 U.S. 62, 67-68 (1991).  Alleged errors in the application of state law are not cognizable in federal habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).  The Court accepts a state court's interpretation of state law.  Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).  In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless it is determined that the interpretation is untenable or a veiled attempt to avoid review of federal questions. Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, there is no indication that any state court's interpretation or application of state law was associated with an attempt to avoid review of federal questions.  Thus, this Court is bound by the state court's interpretation and application of state law.

Insofar as Petitioner rests his claim or claims solely on state regulatory, statutory, and decisional law, Petitioner fails to state facts that would entitle him to relief in a proceeding pursuant to § 2254.  Thus, insofar as Petitioner's claim or claims are based on an application or interpretation of California law, Petitioner's claims must be dismissed because they are not cognizable in a proceeding pursuant to 28 U.S.C. § 2254.

Further, because Petitioner's state claims are defective not because of any dearth of factual allegations, but rather because of their nature as being based solely on state law, Petitioner could not state tenable state law claims that would warrant relief in this proceeding even if leave to amend were granted.

Thus, Petitioner's state law claims will be dismissed without leave to amend.

4

III.   Claims concerning the Denial of Parole

Petitioner claims that the denial of parole constituted cruel and unusual punishment and a denial of due process because his youth was not adequately considered or weighed by the BPH.

A.   Standard of Decision

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06.  The state court need not have cited Supreme Court precedent or have been aware of it, "so

5

long as neither the reasoning nor the result of the state-court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8 (2002). A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.

An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable. Williams, 529 U.S. at 410. A state court's determination that a claim lacks merit precludes federal habeas relief as long as it is possible that fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011). Even a strong case for relief does not render the state court's conclusions unreasonable. Id. In order to obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87. The standards set by § 2254(d) are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398. Further, habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be

6

1  unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132

2  S.Ct. 1195, 1199 (2012).

3          B.  Cruel and Unusual Punishment

4      It is established that there is no right under the Federal

5  Constitution to be conditionally released before the expiration of a

6  valid sentence, and the states are under no duty to offer parole to

7  their prisoners.  Swarthout v. Cooke, 562 U.S. -, 131 S.Ct. 859, 862

8  (2011).  A criminal sentence that is "grossly disproportionate" to

9  the crime for which a defendant is convicted may violate the Eighth

10 Amendment.  Lockyer v. Andrade, 538 U.S. 63, 72 (2003); Harmelin v.

11 Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring);

12 Rummel v. Estelle, 445 U.S. 263, 271 (1980).  Outside of the capital

13 punishment context, the Eighth Amendment prohibits only sentences

14 that are extreme and grossly disproportionate to the crime.  United

15 States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) (quoting Harmelin

16 v. Michigan, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring)).

17 Such instances are "exceedingly rare" and occur in only "extreme"

18 cases.  Lockyer v. Andrade, 538 U.S. at 72 73; Rummel, 445 U.S. at

19 272.  So long as a sentence does not exceed statutory maximums, it

20 will not be considered cruel and unusual punishment under the Eighth

21 Amendment.  See United States v. Mejia Mesa, 153 F.3d 925, 930 (9th

22 Cir. 1998); United States v. McDougherty, 920 F.2d 569, 576 (9th

23 Cir. 1990).

24     The Eighth Amendment bars capital punishment for children,

25 Roper v. Simmons, 543 U.S. 551, 560 (2005), and a sentence of life

26 without the possibility of parole for a child who committed a non-

27 homicide offense, Graham v. Florida, 560 U.S. 48 (2010).  Petitioner

28 relies on Miller v. Alabama, - U.S. -, 132 S.Ct. 2455, 2464 (2012),

7

in which the Court held that a mandatory sentence of life without the possibility of parole for an offender who committed an otherwise capital murder while under the age of eighteen (fourteen years) was cruel and unusual punishment in violation of the Eighth Amendment. The Court determined that the sentencing tribunal must be able to consider the mitigating qualities of youth, such as lessened culpability and greater capacity for change, in order to determine whether a harsh penalty is proportionate for the offender. Id. at 2464-65, 2467. The Court in Miller relied on Graham v. Florida to require that the state provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at 2469 (quoting Graham, 130 S.Ct. at 2030).

Petitioner further relies on Thompson v. Oklahoma, 487 U.S. 815, 835 (1988), holding that the Eighth and Fourteenth Amendments prohibit the death penalty for an offender who committed first degree murder when he was fifteen and prosecuted pursuant to state statutes that set no minimum age for imposition of the death penalty. The Court in Thompson considered whether the juvenile's culpability should be measured by the same standard as that of an adult, and then whether the application of the death penalty to the class of juvenile offenders measurably contributes to the social purposes that are served by the death penalty, id. at 833. The Court recognized the reduced culpability and control of juvenile offenders, id. at 825 n.23, 834-36, and it noted that the death penalty's special retributive and deterrent purposes were thus not served with respect to offenders who were children. Id. at 836-38.

Petitioner also cites Johnson v. Texas, 509 U.S. 350, 367-71 (1993), in which the Court recognized that a defendant's youth is a

relevant mitigating circumstance that must be subject to the effective consideration of a capital sentencing jury if a death sentence is to comport with the Eighth and Fourteenth Amendments, and held that it was sufficient to instruct the jury to decide whether there was "a probability that [petitioner] would commit criminal acts of violence that would constitute a continuing threat to society," and that, in answering the special issues, the jury could consider all the mitigating evidence that had been presented during the guilt and punishment phases of petitioner's trial.

In summary, Petitioner relies on authorities that limit capital punishment, sentences of life without the possibility of parole (LWOP) for a juvenile's non-homicide offenses, or mandatory sentences of LWOP for a juvenile's otherwise capital murder. However, he cites no clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) that applies to sentences of fifteen years to life plus one year for second degree murder with a gun enhancement. No controlling Supreme Court precedent has been brought to the attention of the Court that holds that a sentence of fifteen years to life with the possibility of parole is cruel and unusual punishment for an offender who was a minor when he committed a murder.

The authorities Petitioner relies upon establish that in capital sentencing proceedings, meaningful consideration of the offender's youth as a mitigating factor must be possible. However, there is no clearly established federal law requiring a state sentencing tribunal, let alone a state parole authority acting in its discretion, to consider specific mitigating factors before it imposes a sentence of fifteen years to life with the possibility of

9

parole.  Cf. Miller, 132 S.Ct. at 2464-69 (a sentencing court may be required to consider a defendant's youth and other factors before imposing a sentence of life without the possibility of parole).

In any event, the transcript of the parole suitability hearing reflects that the BPH expressly referred to the fact that Petitioner was seventeen years old at the time of the commitment offense and forty-two at the time of the parole hearing.  (FAP, doc. 8, at 21.) Further, the BPH asked Petitioner to describe the difference between Petitioner at the time of the crime and the Petitioner at the time of the parole hearing, and Petitioner responded.  (Id. at 45-49.) Likewise, the BPH's decision rested on facts that necessarily implied knowledge and consideration of Petitioner's youth at the time of the offense.  The BPH concluded that the offense was cruel and dispassionate in that it had occurred at school with a gun that Petitioner had brought into the school and then had dropped or thrown to a co-participant during a disagreement about use of a telephone with the victim, who was also a young, former student. The BPH relied on Petitioner's previous juvenile history, including his failing successfully to complete previous grants of juvenile probation, and his being influenced by older persons who drew him into gang activity after Petitioner left home as a minor in order to cohabit with a female.  Further, the BPH relied on the fact that although there had been a few very good years of behavior and participation in programming by Petitioner in prison, those years had been preceded by twenty years of negative behavior and minimal programming.  (Doc. 8, 122-29.)

Thus, even if the authorities upon which Petitioner relies were to apply to parole decisions such as the decision before the Court,

10

the record clearly reflects that the BPH was aware of and considered Petitioner's youth at the time of the crime and Petitioner's development during his incarceration.  The BPH gave guidance to Petitioner for the future and determined that Petitioner's parole suitability would be considered in three years.  Thus, the record reflects that the BPH gave Petitioner a meaningful opportunity to improve and to demonstrate maturity with respect to parole suitability.  There is no basis in the record to support a conclusion that Petitioner's sentence is tantamount to life without the possibility of parole.

Further, the Petitioner's continued confinement, which is authorized by state law, is not grossly disproportionate to the violent crime of which he was convicted.  Silva v. McDonald, 891 F.Supp.2d 1116, 1131 (C.D.Cal. 2012) (holding that a sentence of forty years to life with the possibility of parole during the perpetrator's natural life for two attempted murders committed when the perpetrator was sixteen years old was not cruel and unusual punishment); see, Martinez v. Duffy, 2014 WL 547594, *1-*2 (No. C-13-5014 EMC (pr), N.D.Cal. Feb. 7, 2014) (sentence of twenty-five years to life for murder as an aider and abettor committed when the petitioner was seventeen was not cruel and unusual, and a state court decision to that effect did not warrant relief pursuant to § 2254(d); Campo v. Swarthout, 2013 WL 5962930, *1 n.1 (No. 2:11-cv-1622 LKK DAD P, E.D.Cal. Feb. 11, 2013) (Supreme Court cases did not govern because the petitioner was sentenced to twenty-seven years to life for first degree murder, not death or life without the possibility of parole); Khalifa v. Cash, 2012 WL 1901934 at *30 (No. ED CV 10-1446-GAF (PLA), C.D.Cal. 2012), adopted at Khalifa v.

11

Cash, 2012 WL 1901932 (C.D.Cal. May 24, 2012) (denying relief under § 2254 for one sentenced to twenty-five years to life for a first degree murder committed when the offender was fifteen years old).

With respect to adult offenders, it has been held that a sentence of fifty years to life for murder with use of a firearm is not grossly disproportionate, Plasencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006), and a sentence of life imprisonment for first degree murder has been held not to be cruel and unusual punishment under the Eighth Amendment, United States v. LaFleur, 971 F.2d 200, 211 (9th Cir. 1991).

In summary, Petitioner's sentence was not a violation of the Eighth and Fourteenth Amendments, and a state court decision to that effect was not contrary to, or an unreasonable application of clearly established federal law.  Petitioner's allegations concerning his continued incarceration do not entitle him to relief in this proceeding pursuant to 28 U.S.C. § 2254.

Because the complete transcript of the parole suitability proceedings is before the Court, Petitioner could not state a tenable Eighth Amendment claim even if leave to amend the petition were granted.  The Court will thus dismiss Petitioner's claim of cruel and unusual punishment without leave to amend.

C.   Denial of Due Process

Petitioner argues that his liberty interest and right to due process of law were violated by the BPH's parole decision because the BPH did not properly weigh the mitigating factor of Petitioner's youth.  Petitioner contends that the determination that Petitioner was unsuitable for parole because he presented an unreasonable danger to society if released was unsupported by the evidence.

12

Petitioner argues that because of his minority at the time of the offense and the passage of time, the character of the commitment offense was no longer probative of danger to the public.

The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which in turn requires fair procedures with respect to the liberty interest.  <u>Swarthout v. Cooke</u>, 562 U.S. B, 131 S.Ct. 859, 861-62 (2011).  However, the procedures required for a parole determination are the minimal requirements set forth in <u>Greenholtz v. Inmates of Neb. Penal and Correctional Complex</u>, 442 U.S. 1, 12 (1979).[1]  <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 862.  In <u>Swarthout</u>, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of some evidence to support the decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution to be conditionally released before the expiration of

---

[1]   In <u>Greenholtz</u>, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made.  <u>Id.</u> at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision.  <u>Id.</u> at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee.  <u>Id.</u> at 9.  Further, the discretionary decision to release one on parole does not involve retrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary.  <u>Id.</u> at 13.  In <u>Greenholtz</u>, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole.  <u>Id.</u> at 15.

a valid sentence, and the States are under no duty
to offer parole to their prisoners.  (Citation omitted.)
When however, a State creates a liberty interest,
the Due Process Clause requires fair procedures for its
vindication-and federal courts will review the
application of those constitutionally required procedures.
In the context of parole, we have held that the procedures
required are minimal.  In Greenholtz, we found
that a prisoner subject to a parole statute similar
to California's received adequate process when he
was allowed an opportunity to be heard and was provided
a statement of the reasons why parole was denied.
(Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.  The Court concluded that the

petitioners had received the process that was due as follows:

They were allowed to speak at their parole hearings
and to contest the evidence against them, were afforded
access to their records in advance, and were notified
as to the reasons why parole was denied....

That should have been the beginning and the end of
the federal habeas courts' inquiry into whether
[the petitioners] received due process.

Swarthout, 131 S.Ct. at 862.  The Court in Swarthout expressly noted

that California's "some evidence" rule is not a substantive federal

requirement, and correct application of California's "some evidence"

standard is not required by the Federal Due Process Clause.  Id. at

862-63.

    Here, Petitioner's claim concerning the BPH's weighing of his

youth constitutes a challenge to the adequacy of the BPH's

consideration of Petitioner's youth and to the weight and

sufficiency of the evidence supporting the BPH's determination that

Petitioner remained dangerous to the public safety.  In this claim,

Petitioner is raising a "some evidence" claim because he is

essentially challenging the sufficiency of the evidence to support

14

the BPH's finding of dangerousness.

In this claim, Petitioner does not state facts that point to a real possibility of constitutional error or that otherwise would entitle Petitioner to habeas relief because California's "some evidence" requirement is not a substantive federal requirement. Review of the record for the sufficiency of "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254.

The transcript of the parole suitability hearing held on September 26, 2011 (doc. 8, 18-130), reflects that Petitioner was present at the hearing with counsel, who had reviewed all documentation before the hearing.  Petitioner testified at length concerning various parole suitability factors, including the facts of the commitment offense; Petitioner's attitude towards the offense; Petitioner's programming, behavior, and development in prison; and his parole plans.  (Id. at 29-121.)  Petitioner's counsel and Petitioner made closing statements.  (Id. at 105-17.) Petitioner was present when the panel announced the reasons for its decision that Petitioner posed an unreasonable risk of danger if released, which included the nature of the commitment offense, Petitioner's lack of credibility with respect to his version of the commitment offense, Petitioner's prior criminality and gang activity, and his extensive history of misbehavior in prison preceding a shorter period of successful adjustment.  (Id. at 122-31.)

It thus appears that Petitioner received all process that was due with respect to the suitability hearing.  The documentation submitted by Petitioner as an attachment to the FAP demonstrates

that Petitioner received the appropriate procedures, the panel members considered the pertinent factors of parole suitability, and a decision based on those factors was made and articulated to the Petitioner.

With respect to substantive due process, the substantive component of due process protects against governmental interference with those rights "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 324-25 (1937).  It forbids the government to infringe fundamental liberty interests, such as the right to liberty, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.  Reno v. Flores, 507 U.S. 292, 301-02 (1993).

Here, Petitioner has failed to allege facts warranting a conclusion that the BPH's decision infringed a federally protected, fundamental right.  Petitioner's rather conclusional allegations do not state facts that point to a real possibility of constitutional error.

Further, it is established that even where state law creates a liberty interest in parole, there is no federal right to be conditionally released before the expiration of a valid sentence. Roberts v. Hartley, 640 F.3d 1042, 1045 (9th Cir. 2011) (citing Swarthout v. Cooke, 131 S.Ct. at 861-62).  In Swarthout v. Cooke, the Court did unequivocally determine that the Constitution does not impose on the states a requirement that decisions to deny parole be

16

supported by a particular quantum of evidence, independent of any requirement imposed by state law. Roberts v. Hartley, 640 F.3d at 1046; Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011). A state's misapplication of its own laws does not provide a basis for granting a federal writ of habeas corpus. Roberts v. Hartley, 640 F.3d at 1046.

Although Petitioner asserts that his claims are based on a right to substantive due process, it is recognized that there is no substantive due process right created by California's parole scheme; if the state affords the procedural protections required by Greenholtz and Swarthout v. Cooke, the Constitution requires no more. Roberts v. Hartley, 640 F.3d at 1046.

In summary, to the extent that Petitioner raises a procedural due process claim, the claim should be dismissed. Petitioner's claim of a substantive due process violation should also be dismissed. Because it does not appear that Petitioner could allege a tenable due process claim of either type if leave to amend were granted, the claims will be dismissed without leave to amend.

IV.  Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of

17

appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and, with respect to a procedural denial, that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. at 483-84.

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was wrong or debatable among jurists of reason.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

18

1    Accordingly, the Court will decline to issue a certificate of
2 appealability.

3    V.   Disposition

4    In accordance with the foregoing analysis, it is ORDERED that:

5    1) Petitioner's petition for writ of habeas corpus is DISMISSED
6 without leave to amend; and

7    2) The Court DECLINES to issue a certificate of appealability;
8 and

9    3) The Clerk is DIRECTED to close the action because this
10 dismissal terminates it in its entirety.

11

12 IT IS SO ORDERED.

13   Dated:   **March 11, 2014**          /s/ *Barbara A. McAuliffe*
14                                    UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28